FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

01 JAN 29 PM 3: 09

U.S. DISTRICT COURT
H.D. OF ALABAMA

LINDA BECK,

　　　　Plaintiff,

vs.                                           CASE NO. CV-99-J-2355-J

CITY OF HALEYVILLE, ALABAMA,
et al.,

**ENTERED**

　　　　Defendants.

JAN 2 9 2001

## MEMORANDUM OPINION

Currently pending before the court is the defendants' joint motion for summary judgment (doc. 29), and brief in support thereof ("brief in support"), to which the plaintiff submitted a brief in opposition ("plaintiff's opposition"). Thereafter, defendants submitted a reply to plaintiff's opposition. Both parties have also filed evidentiary submissions in support of their respective positions. The court has reviewed the motion, the memoranda of law and the evidentiary submissions of the parties.

## I. Procedural History

Plaintiff commenced this action by filing a complaint (doc. 1) alleging that the defendant discriminated against her on the basis of her sex and age, as evidenced by her non-selection for a permanent position within the Haleyville Police Department, and that she was paid less than male officers who performed substantially the same duties as she did. Complaint at ¶¶ 4, 8, 10; plaintiff's deposition at 76, 78, 183. The plaintiff alleged that her non-selection and lesser pay was in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(b), Title VII of the Civil Rights Act, as amended, and 42 U.S.C.

36

§ 1983.  Upon consideration of the pleadings, memoranda of the parties, and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted.

## II.  Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows:  The plaintiff applied for a position as a community police officer with the Haleyville Police Department after an advertisement for the same ran in the local paper.  Reogas deposition at 34; affidavit of Reogas at ¶ 4, submitted as Exhibit 3 to defendants' evidentiary submissions; exhibit C to Reogas affidavit; exhibit 11 to defendants' evidentiary submissions; exhibit 1 to plaintiff depo.  Three other females, all younger than her, and four males, three of whom were younger than her, also applied for the position, which was funded through a three year grant.[1]  Reogas affidavit at ¶ 5 and exhibit D thereto.  Plaintiff was 49 years old at the time.[2]  She was hired based upon the recommendation of the police chief, Kyle Reogas, with the approval of the city council.  Reogas depo. at 30, 34, 43; Reogas affidavit at ¶ 6.  Upon her hire, the plaintiff was the only officer in the City of Haleyville employed under a grant.  Reogas affidavit at ¶ 6.

The job description was for a community police office, however, plaintiff was told when she interviewed with Chief Reogas that the position would also require some regular patrol work.  The plaintiff was told that the position paid $8.14 and hour to start, unless she

---

[1]The grant was a "COPS FAST" grant which provided limited federal monies to fund an officer position in conjunction with funds provided by the city.  Affidavit of Reogas, at ¶ 3.

[2]The plaintiff's date of birth is August 17, 1946.  Plaintiff deposition at 9.

performed work in place of a patrol officer.[3]  Plaintiff depo. at 78-79; Reogas affidavit at ¶ 5.  The plaintiff alleged she was told she would receive patrolman's pay when that occurred. Plaintiff depo. at 110-111, 175.  Reogas does not recall saying this.  Reogas depo. at 38.  The plaintiff stated she mentioned this to Reogas, who told her he did not remember saying this, but may have.  Plaintiff depo. at 98.

Chief Reogas testified that he is sure he told the plaintiff what the position paid and that the grant was for a three year position, after which a decision would be made as to whether to continue to fill that position.  Reogas depo. at 35.  Reogas testified that the plaintiff did not earn what patrol officers did.  Reogas depo. at 59.  However, by affidavit he explained that, at the time he applied for the grant, the hourly rate of pay for new officers was $8.09 per hour, increasing to $8.30 per hour after nine months and $8.51 per hour after one year.  Reogas affidavit at ¶ 3.  Based on an average of $8.09 and $8.31, he determined the grant position would pay $8.14 for the first year and $8.51 for the following two years. *Id*.  At the time he determined these amounts, this was equal to or more than other officers were being paid (due to the first year salary averaging).  Reogas affidavit at ¶ 13.  The pay disparity resulted from subsequent increases given to non-grant officers in October 1995 and February, 1996.  *Id*. at ¶ 14.  Reogas believed that giving the plaintiff the subsequent increases might violate the terms of the grant.[4]  *Id*. at ¶ 15.

---

[3]The hourly amount was based on Reogas' belief that the funds would be approximately $75,000.00.  Reogas affidavit at ¶ 3 and exhibit A thereto.

[4]In June, 1997, the city applied for finds for two additional positions through the COPS FAST grant.  Exhibit I to Reogas affidavit.  Reogas set the wages for these positions at $8.49 for

The plaintiff obtained her GED in 1998. Plaintiff dep. At 17. She holds a minimum standard certification as a law enforcement office from the State of Alabama, which she received in September, 1989. *Id.* at 11.

The plaintiff began working for the defendants in October, 1995, as a community police officer, until the grant under which she worked expired on October 23, 1998. Plaintiff depo. at 28; Reogas affidavit at ¶ 12. The plaintiff asserts she was told that she would work eight hour shifts, five days a week, but ended up working twelve hour shifts two or three weeks into her employment. Plaintiff depo. at 59.[5] She also testified that within a few weeks of beginning her employment, her job duties shifted from those of a community police officer to a regular patrol officer. Plaintiff depo. at 66-67; deposition of Susan Holley at 12. The plaintiff complains that because she was performing the duties of a patrol officer, she should have been paid the same as other officers of her same experience and seniority. Plaintiff depo. at 79. The plaintiff listed Jason Williams, David Crittenden, Randy Brimer and Charles Nicholson as officers she considered her equals as far as experience and seniority. *Id.* at 86. She then agreed that she did not have more experience than Nicholson, and Brimer probably had a college degree, which she did not. *Id.* at 90, 113. She could not

---

the first year and $8.91 for the next two years. The two officers hired into these positions, Kyle Hulsey and Steven Painter, did not receive the cost of living increase all other officers, including the plaintiff, got in June, 1997, nor a 5% salary increase other officers received in March, 1999. Reogas affidavit at ¶¶ 17-18. At the time of the March, 1999 increase, Hulsey and Painter were being paid $8.91 per hour while non-grant officers with more than one year employment with the city received $10.04 per hour. Reogas depo. at ¶ 18. At the time of their hire, neither of these individuals had attended the academy. Reogas depo. at 64-65.

[5]The plaintiff makes no claim that she was not paid accordingly for the additional hours, or even that the twelve hour shifts resulted in her working additional hours.

articulate how much experience Crittenden had. *Id.* at 91. She also stated that two officers (Kyle Hulsey and Steven Painter) were hired after her, also on a grant, who did not have academy training at the time they were hired. *Id.* at 86-87. The plaintiff states she had more experience than these two officers because they did not have academy training at the time of their hiring. *Id.* at 121.

She stated she never received any raises or cost of living increases.[6] Plaintiff depo. at 79-80. The plaintiff also testified that she did not know how salaries were determined or what a starting officer's pay would have been at the time she was hired. *Id.* at 80. She then testified that she did get about a fifty cent increase, to $8.66 an hour because "[i]t was just due." *Id.* at 82, 83. The plaintiff later agreed she received a raise to $8.51 an hour on October 23, 1996. *Id.* at 215-216 and exhibit 14 to plaintiff depo. *See also* Reogas affidavit at ¶ 7. She also received a fifteen cent cost of living increase in June, 1997, which was given to all officers employed with the city for more than one year. Reogas affidavit at ¶ 12.

The plaintiff stated she talked to the police chief about her pay and was told she was earning all that the grant paid. Plaintiff depo. at 101. Reogas did not believe he could pay her any more under the grant. Reogas depo. at 61. The plaintiff admitted she never requested the chief increase her pay. Plaintiff's depo. at 101. Reogas testified at deposition that the plaintiff did come to him about why she was not being paid the same as patrolmen

---

[6]The plaintiff testified that she received a twenty-five cent an hour increase but it was taken away from her because she was told that it might "mess up the grant and lose the grant." She agreed to let the defendants take the raise away. In fact, she testified that her understanding was that the only reason the raise was taken away from her was concern over complying with the grant. Plaintiff depo. at 81-82.

and he explained that the City of Haleyville agreed to pay her a certain amount under the grant, that she accepted it, and that his understanding was that it could not be changed for three years. Reogas depo. at 85-86. Reogas stated "the way I looked at it was that I offered and she accepted and agreed to work for three years at a specific hourly rate of pay." Reogas depo. at 86. Reogas agreed that the plaintiff was paid less than non-grant patrol officers. *Id.* at 59. Sergeant Holley stated she knew plaintiff was paid less than other officers, but guessed she was paid what the grant allotted for a community officer. Holley depo. at 13.

Nothing prevented the plaintiff from performing community police officer duties during her patrol except when there was a shortage of officers. Plaintiff depo. at 68. She did not perform duties different from the other officers except that she tried to meet the children's school buses every morning, which none of the other officers did.[7] *Id.* at 68. She also visited with the elderly. *Id.* at 70. Toward the end of plaintiff's employment with the city, Officer Dennis Bales and Officer Jason Williams began performing community police officer duties. Reogas depo. at 99. Reogas stated that Bales did a better job than plaintiff and Jason Williams was the K-9 officer, which made him a natural for appearances with youth groups. Reogas depo. at 100. Since plaintiff's employment ended, these two officers and others have taken over the community officer duties.[8] *Id.* at 101.

_____

[7] The plaintiff is not alleging that she was discriminated against based on the job assignments she received. Plaintiff's depo. at 75.

[8] No evidence that the defendants reapplied for a community police officer grant since 1998 was presented by either side.

When asked what evidence the plaintiff had that she was paid less than patrol officers because of her age, she replied "Nothing other than, like I said, that all the males – everybody else got more money." She gave the same answer as to her claim she was paid less because of her sex. Plaintiff depo. at 116. However, the plaintiff admitted she did not know what other officers were paid during the time she was employed with defendant. *Id.* at 95, 97, 182.

The plaintiff also complains that she applied for openings within the Haleyville Police Department in May, 1997, October, 1997, July, 1998, January, 1999 and April or May of 1999 and got none of these positions. Plaintiff depo. at 117, 133; exhibits 4-8 to plaintiff deposition. The plaintiff testified that she was more qualified than all of the people hired to fill vacancies for which she applied because they had not attended the law enforcement academy and had no law enforcement experience.[9] Plaintiff depo. at 120, 121, 124. The plaintiff also stated that after applying on one of these occasions, Chief Reogas told her she had to stay in her current position until the end of the grant. *Id.* at 119, 123-124. He testified that he did not consider her for any of the positions which came open during the term of the grant because he felt he had committed to her, and she had accepted, "an employment

---

[9]Johnny Smith was hired in June, 1997; he had twelve years experience as a municipal officer before he was hired by defendant, including previous employment with Haleyville from 1986 to 1995. Reogas affidavit at ¶ 20. When Michael Hughes was hired for the October, 1997, position, he had been a minimum standards certified officer since 1993. *Id.* at ¶ 21. In August, 1998, Brian Thompson was hired – although he had not completed the academy he held a criminal justice degree from the University of Alabama – and was hired in part because he was the nephew of the chairman of the zoning board. *Id.* at ¶ 22. Plaintiff asserts, and no evidence disputes, that each of these individuals was male and younger than plaintiff. Plaintiff depo. at 89-90.

agreement for a three-year period.  And I felt that I was obligated under the federal grant guidelines to do nothing different."  Reogas depo. at 60-61.  He further explained that he considered the plaintiff obligated to fill the three year grant term before she could be considered for non-grant positions.  Reogas affidavit at ¶ 25.  The plaintiff states that the day before the grant ended, Reogas told her that she was job hunting when she was hired, he hired her, and now she was job hunting again.  Plaintiff depo. at 127.

The plaintiff was ultimately not retained or hired into another position after the expiration of the grant because the mayor and police chief objected to her continued employment and the police chief refused to recommend she be rehired/retained.[10]  Plaintiff depo. at 148; Reogas affidavit at ¶ 33.  *See also* affidavit of Mayor M. Ray Boshell, exhibit 6 to defendant's evidentiary submissions.  When asked what evidence she had that she was not hired for patrol officer positions because she was female, the plaintiff responded she just "didn't feel included."[11]  Plaintiff depo. at 153.  She also stated that Chief Reogas always hired younger males for patrol officer positions.  *Id.* at 161.  Further, the plaintiff stated that she was written up over denting a vehicle and other officers were not.  *Id.* at 175.

The plaintiff testified that her paper work was returned to her on several occasions because it was not satisfactory.  Plaintiff depo. at 200.  Sergeants Holly and Stein both

---

[10]While the city council had a motion in front of it that the plaintiff be retained, because Chief Reogas refused to recommend her, an advisory opinion was obtained from the attorney general's office which stated that the council could not hire absent a recommendation from the department head.  Reogas' affidavit at ¶¶ 33-34; exhibit T to Reogas' affidavit.

[11]The plaintiff gives as an example of her feeling of exclusion that she was told not to respond to calls in a particular area.  Plaintiff's depo. at 159.  However, she admits this was because she had a problem with an individual who "stayed" in that area.  *Id.*

pointed out mistakes she made in her paper work to her. *Id.* at 201. However, the plaintiff states she was never told she made too many mistakes. *Id.*

The plaintiff testified that the Henry Clapper incident, on April 19, 1997, occurred when she stopped a vehicle, not knowing Mr. Clapper was a passenger. Plaintiff depo. at 216. She observed beer bottles and whiskey bottles in the floorboard. *Id.* at 217. Two other officers, David Crittenden and Johnny Smith arrived, as well as possibly Jason Williams. *Id.* She gave the driver of the vehicle a sobriety test (which he passed) while the other officers asked Mr. Clapper and a young lady, also a passenger, to step out of the vehicle. *Id.* at 217, 222. A loaded gun was found. *Id.* Mr. Clapper was placed in a patrol car by other officers, but then removed. The plaintiff testified at deposition that he:

> started automatically running his mouth again and I made the statement to him, Henry, that's always been your problem; you can't keep your damn mouth shut. And he said to me, well, that was my baby. And I said no, Henry. I'm raising your baby because you're too sorry to.
>
> And then he started on me as to the fact that – and I wouldn't even allow him to see her. And I lost my cool. I ought not. And I told him I'd kill him before he seen my baby. And the reason for this is because he abused this child when he had her. He's a dope head, a drunk. He – when she was five-and-a-half weeks old, she had throwed up on him and he smeared her little face in it and whipped her at five-and-a-half weeks old. And I knew – do not deny the fact that I do have a personal vendetta. And I did threaten to kill him. I didn't deny that.
>
> As a matter of fact, I went to the chief with it. And the chief made some kind of statement to me in essence that I think at one time the other – all patrolled officers make a threat as to killing somebody but we don't really mean it. And I told the chief, I said, no, sir, you're wrong. I mean every word of it. I will kill him before he touches my grand baby again.

> Anyhow, Mr. Clapper when – and I was restrained.  I don't deny that, Crittenden came between me and Clapper and told me to go ahead and get back in my car; that he would handle it.[12]

Plaintiff depo. at 218-220. The plaintiff was restrained because she had drawn her flashlight back and had started toward Mr. Clapper. *Id.* at 225. She stated that in all honesty, she was sure she intended to hit him with it. *Id.* After this incident, the plaintiff was told by Chief Reogas to not longer patrol or respond to calls in the area where Mr. Clapper was known to often be. *Id.* at 220.  Plaintiff admits she told the chief that she would not abide by his order if an officer needed assistance in that area. *Id.* at 230.  *See also* Reogas depo. at 84-85.

At deposition, the plaintiff admitted to threatening to kill Mr. Clapper on this occasion:

> "[m]aybe a couple of times.  I think I made the statement I'll kill you before you ever touch her again or get to her again ....  And I still basically feel the same way."

Plaintiff depo. at 223. The plaintiff admitted she did not act professionally or appropriately on this occasion. *Id.* at 228.  Chief Reogas testified that the day following this incident, Officer Crittenden contacted him at home to relay the threats made by plaintiff to Clapper.[13] Reogas depo. at 83.

The plaintiff also admits that when she first got hired, she drove a city vehicle while having an expired driver's license because she did not know it was expired until she had

---

[12]The child in question is the plaintiff's granddaughter and Mr. Clapper's daughter. Plaintiff depo. at 229.

[13]Chief Reogas also conducted an investigation into the incident, including taking statements from those involved.  Reogas affidavit at ¶ 9, and exhibits E-H thereto.

been working about a week. Plaintiff depo. at 233-234. The plaintiff testified that she was late to work "on a fairly regular basis" for "a while." *Id.* at 240. She was written up for being late when she first started and then began arriving on time. *Id.* at 241. The plaintiff explained she was not late consistently because, "occasionally, I got to work on time." *Id.* at 243. The plaintiff also states she went to yard sales "on the weekend" while she was on duty to shop and look. *Id.* at 243. The plaintiff also admitted trying to tape record a conversation she had with Chief Reogas. *Id.* at 247-248.

Reogas testified that he considered the plaintiff's three year employment under the grant when considering whether to rehire her. Reogas depo. at 70. He stated that she did things which were not proper and not in the best interests of the city or the department and that he considered input from her supervisors as well. *Id.* One of her supervisors, Tim Stein, stated that Chief Reogas asked him if he would keep the plaintiff as a patrol officer, to which Sergeant Stein said no. Affidavit of Tim Stein, exhibit 4 to defendants' evidentiary submissions, at ¶ 4. Stein stated he spoke with plaintiff about stopping at yard sales and being late for work. Deposition of Stein at 13. Reogas also testified that he spoke with Sergeant Buddy Veal, who similarly stated that the plaintiff should not be retained. Reogas depo. at 74-75.

Reogas further mentioned time sheets showing the plaintiff working when she was not, the incident with Henry Clapper, reports of her obtaining absentee ballots for people, spending excessive amounts of time at garage sales, complaints from other officers that the plaintiff would leave her yard sale purchases in the back of patrol cars, problems with

11

remaining neutral in certain situations, calling in sick so she could have linoleum delivered, and negative input from her immediate supervisors. Reogas depo. at 72-74; Reogas affidavit at ¶ 30. He also received calls inquiring why the plaintiff spent as much time as she did at local businesses. Reogas depo. at 77.

> Reogas stated that considering the above incidents, he found the plaintiff to be:
>
> unprofessional, careless and inattentive, insubordinate, behaved in a manner unbecoming a police officer, had attempted to physically assault a citizen ... made inappropriate requests for confidential information,[14] regularly tardy to the detriment of fellow officers, and, in short, that Ms. Beck had failed to perform her duties in a satisfactory manner. Based on these beliefs and conclusions, I determined that she was not qualified for further employment by the City of Haleyville as a law enforcement officer, it was not in the best interests of the police department to continue to employ Ms. Beck as a police officer and that I would not recommend Ms. Beck for a non-grant patrol officer position upon the conclusion of the grant or thereafter.

Reogas affidavit at ¶ 32. Sergeant Holley testified that she considered the plaintiff to be an average officer, and as qualified as some of the other officers. Holley depo. at 13, 16, 20.

During the three year period plaintiff worked for defendant, defendant employed five officers who were older than the plaintiff. Reogas affidavit at ¶ 19. One other female was also employed by the department, Susan Holley. *Id.* ; Reogas depo. at 21. Holley had been promoted to sergeant at the same time Reogas was. Reogas depo. at 24. Other than plaintiff

Reogas testified that his understanding was that he had hired the plaintiff for three years. He stated, "And that's my word that I gave her when she was hired. Our agreement was that you'll have a job for three years." Reogas depo. at 80.

---

[14]The plaintiff stated "there's not a law officer anywhere that don't do it." Plaintiff depo. at 249.

12

and Holley, no other women have been employed at the department since 1996, although females have applied for positions as police officers. *Id.* at 58, 68.

### III. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11ᵗʰ Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11ᵗʰ Cir. 1995).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11ᵗʰ Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.  See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11ᵗʰ Cir. 1993).  However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,*  814 F.2d 607, 609 (11ᵗʰ Cir. 1987).

## IV. Discussion

### A. The failure to rehire plaintiff based on age and/or sex[15]

Under the ADEA, an employer may not refuse to hire or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1); *Chapman v. AL Transport*, 229 F.3d 1012, 1024 (11th Cir.2000). Liability depends on whether the plaintiff's age actually motivated the employer's decision. Her age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (citations omitted). To evaluate ADEA claims based on circumstantial evidence, this court must use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Reeves*, 120 S.Ct. at 2105.

Similarly, under Title VII of the Civil Rights Act of 1964, as amended, an employer may not discriminate against any employee with respect to her compensation, terms, conditions, or privileges of employment because of, amongst other things, her sex. 42 U.S.C. § 2000e-2(a)(1). As with the ADEA, when evidence of discrimination is circumstantial in nature, the court must apply the three prong test for focusing the court's examination of the evidence and allegations established in *McDonnell Douglas Corp. v. Green, supra*; *see also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248;

---

[15]The plaintiff stated at her deposition that her claims are for the failure to pay her what patrol officers were paid and the failure to hire her after the grant expired. Plaintiff depo. at 78.

252-253; 101 S.Ct. 1089, 1093-1094, 67 L.Ed.2d 207 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991).

Under this burden shifting standard, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997). Meeting this burden creates a presumption of discrimination. *Combs*, 106 F.3d at 1528. In *Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428 (11th Cir.1998), the Court specifically addressed the standard to apply when a plaintiff attempts to use circumstantial evidence to establish unlawful discrimination under the ADEA. The Court stated that a burden shifting scheme is employed, as follows: The plaintiff must establish a *prima facie* case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate reason was a pretext to mask unlawful discrimination. *Turlington*, 135 F.3d at 1432, citing *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir.1995).

To establish her prima facie case under the ADEA for age discrimination, plaintiff must show (1) she was a member of the protected group (age), (2) she was subjected to an adverse employment action, (3) she was qualified for the job and (4) she was replaced or otherwise lost a position to a younger individual. *Benson v. Tocco, Inc.*, 113 F.3d 1203,

1207-08 (11th Cir. 1997). *See also O'Conner v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).

Likewise, under Title VII, the plaintiff must show (1) she is a member of a protected class (female); (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) she was rejected; and (4) after her rejection, the position remained open. *O'Connor,* 517 U.S. at 310-311, 116 S.Ct. at 1309, citing *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824. *See also Shoenfeld v. Babbitt,* 168 F.3d 1257, 1267 (11th Cir. 1999). Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 254, 101 S. Ct. at 1094; *Combs v. Plantation Patterns,* 106 F.3d at 1527.

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir. 1996). The defendant can feasiblely present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied,* 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590. 596 (11th Cir.1987). "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by the defendant were a pretext for discrimination." *Brown,* 939 F.2d at 950.

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

This court finds, taking the evidence presented in the light most favorable to the plaintiff, the plaintiff does establish a prima facie case of age discrimination, based on the above stated analysis this court must apply. The court finds no evidence of sex discrimination because the plaintiff has wholly failed to show that any other employee, female or male, who was employed under a grant, was not rehired at the expiration of the grant. The plaintiff did establish that two younger males were hired under grants after plaintiff was, but no evidence as to whether they were retained at the expiration of the grants has been presented to this court.

Because the court does find that the plaintiff met her burden for establishment of a prima facie case of age discrimination, the burden shifts to the defendants to present a legitimate, nondiscriminatory reason for the challenged action (the failure to hire plaintiff). *Combs*, 106 F.3d at 1528; citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The

defendants here put forth a myriad of reasons plaintiff was not retained nor hired into another position during the pendency of or upon completion of the grant.[16]

Chief Reogas testified that he believed the plaintiff to have a three year obligation to the city. Reogas depo. at 60-61; Reogas affidavit at ¶ 25.  He also stated that she was not rehired after the grant expired because of numerous examples of behavior he thought inappropriate for an officer, such as time sheets showing the plaintiff working when she was not, the incident with Henry Clapper, reports of her obtaining absentee ballots for people, spending excessive amounts of time at garage sales, complaints from officers that the plaintiff would leave her yard sale purchases in the back of patrol cars, problems with remaining neutral in certain situations, calling in sick so she could have linoleum delivered, and negative input from her immediate supervisors.  Reogas depo. at 72-74, Reogas affidavit at ¶¶ 30, 32.  The defendants also allege that the plaintiff's conduct violated numerous standards of conduct adopted by the Haleyville Police Department.  Defendants' brief in support at 21; exhibit P to Reogas affidavit.

The defendant's burden at this point is merely one of production, it does not have to show that the reasons set forth actually motivated the employment decision.  *Chapman,* 229 F.3d at 1024, quoting *Combs,* 106 F.3d at 1528.  Because the defendant articulated one or more legitimate, nondiscriminatory reasons for its actions, the presumption of discrimination

---

[16]Although the court finds that the plaintiff did not meet her burden on the failure to rehire claim based on sex discrimination, the court does note that all of the evidence presented by both sides to this litigation is equally applicable to sex discrimination as it is age discrimination.

is eliminated and the plaintiff has "the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1528; citing *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094-1095 & n. 10.   The plaintiff must proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, otherwise the defendant is entitled to summary judgment. *Combs,* 106 F.3d at 1530.   *See also Harris,* 99 F.3d at 1083.

Rather than rebutting the laundry list of nondiscriminatory reasons offered by the defendant, the plaintiff states only that she basically just didn't feel included (plaintiff depo. at 153);  that younger males were hired for patrol officer positions (plaintiff depo. at 161); and that she was written up over denting a vehicle and other officers were not.   Plaintiff depo. at 175, 211; exhibit 11 to plaintiff depo.[17]   The plaintiff further agrees that her paper work was returned to her on several occasions because it was not satisfactory; and that she repeatedly threatened to kill Mr. Clapper, a private citizen.   Plaintiff depo. at 200, 223.   The court finds the evidence offered by the plaintiff actually supports the defendants' nondiscriminatory explanations for the decision to not re-hire plaintiff, rather than showing that these explanations were a pretext for discrimination. *See Reeves,* 120 S.Ct at 2106.

---

[17]*See also* Reogas depo. at 104, explaining that the plaintiff hit a parked police vehicle with hers.  She also got her patrol car stuck in a gravel pit on several occasions.

The plaintiff argues that the fact that everyone hired after her was male. Plaintiff's brief in opposition at 28. The court notes that the Haleyville police force consists of fourteen or fifteen officers at any one time. Haleyville is a small city in a rural county. The plaintiff has offered no evidence that other qualified females even applied for employment with the police force before or after the date of her hire, except in conjunction with the grant position she held. She also offers no explanation for how Reogas' hiring her when male applicants for the position were available fits with her theory of sex discrimination. The same is true for her claim of age discrimination.[18]

Furthermore, this court finds that the plaintiff was 49 years old at the time she was hired and fifty-two years old at the time the grant expired. Any inference of discrimination is much weaker when the plaintiff is already well within the protected category when she was hired. *See e.g., O'Conner v. Viacom Inc./Viacom Int'l, Inc.*, 1996 WL 194299 at 7 (S.D.N.Y. April 23, 1996) *aff'd* 104 F.3d 356 (2nd Cir.1996); citing *Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921 (2nd Cir.1981). The court finds an inconsistency in the plaintiff's age discrimination claim, as she must establish that the very same person who decided to hire her in 1995 refused to hire her in 1998 because of her age. The plaintiff has presented no evidence to this court that stated reasons she was not hired for a non-grant position either during the pendency of the grant or thereafter were pretextual. The

---

[18]The plaintiff offered testimony of Susan Holley, the other female employee at the department, that Reogas does not like women. Holley depo. at 16 ("I just don't think he likes female officers"). Aside from the fact that the court finds this to be hearsay and has stricken the same by separate order, the court notes that even if admissible, the very act of hiring plaintiff seems to disprove this allegation. *See* plaintiff's memorandum at 28.

defendants' numerous examples of problems with the plaintiff's job performance call into question plaintiff's qualifications to do the job. *See Holiness v. Moore-Handley*, 114 F.Supp.2d 1176, 1182-1183 (N.D.Ala.1999) ("[The plaintiff's] assertions of his own good performance in the face of the documented deficiencies are insufficient to show that [defendants] proffered reasons are pretextual"), citing *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

While the plaintiff makes loose allegations that her job performance was acceptable, the plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer. *Lee v. GTE Florida*, 226 F.3d 1249, 1253 (11th Cir. 2000). This court finds that any reasonable jury could believe that threatening to kill a private citizen is a sufficient reason to not re-hire an already trained police officer.[19]

## B. Sex discrimination based on unequal pay

The plaintiff also alleges under Title VII that she was paid less than similarly situated patrol officers because she was female. The same standards set forth above under Title VII are equally applicable to this claim of discrimination. The plaintiff has established, and the defendants agree, that the plaintiff was paid less than other officers at all times she was employed under the grant. However, the plaintiff was the only officer employed under that

---

[19]This court notes the dangerous precedent that could be set by ruling that a personal vendetta against a private citizen is not sufficient cause to not re-hire an officer. This court can only imagine the resultant chaos if employers sanctioned armed officers in acting on personal vendettas while on duty.

particular grant.  As such, the plaintiff is unable to show that similarly situated males were paid more than she was.  *See Holifield v. Reno*, 115 F.3d 1555, 1562-1563 (11th Cir.1997); *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994).

Assuming, in the light most favorable to the plaintiff, that she has presented sufficient evidence to establish a prima facie case, the defendants have put forth a legitimate, nondiscriminatory reason for the pay disparity.  Chief Reogas testified that he believed increasing the plaintiff's pay would violate the terms of the grant.  Further, Reogas testified that the pay under the grant was determined at the time the application for the grant was written, months before the plaintiff even applied for the position in question.  *See* exhibit A to Reogas depo.  The plaintiff must, but has failed to, offer affirmative evidence to show the stated reasons were not the true reasons for the pay disparity.  *Lee*, 226 F.3d at 1253 ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex").  *See also Walker,* 53 F.3d at 1564 ("evidence showing a false factual predicate underlying the employer's proffered reason does not unequivocally prove that the employer did not rely on the reason in making the employment decision.  Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information"); *Miranda v. B & B Cash Grocery Store,* 975 F.2d 1518, 1528 (11th Cir.1992).  The plaintiff has also failed to present any evidence that had a male filled the grant position, he would have been paid more.

Further buttressing Reogas' claims, the defendants have also offered evidence that two younger, male officers hired under a similar grant the following year did not receive

23

salary increases that other officers received. The plaintiff has offered no evidence to establish that this is false, or even that her salary could have been increased without violating the terms of the grant. Thus, this court finds that the most similarly situated officers, the two males hired under the later grant, also did not receive increases. Even if the plaintiff had presented any evidence that Reogas was mistaken in his belief that salaries could not be increased under the grant, this would still be insufficient for the plaintiff to present her claims to a jury. That plaintiff has the burden to show that a discriminatory reason more than likely motivated the defendant to pay her less than her male counterparts. *Miranda*, 975 F.2d at 1528.

As such, this court can find no evidence in support of plaintiff's allegation of discrimination. The court finds that the plaintiff was hired for a set term and with a set rate of pay. The plaintiff accepted these terms of employment when she accepted the position of community police officer. The fact that she was not rehired after the grant expired, nor the fact that she was paid in accordance with the terms of the grant, create a jury question of discrimination. The court finds that the defendants complied with the stated terms of plaintiff's employment in every way. The fact that plaintiff believed she did a good job, or should have received a higher salary, does not make the defendants' compliance with the stated grant terms discriminatory. As such, this court finds that summary judgment is due to be granted in favor of the defendants and against the plaintiff on all claims under Title VII and the ADEA, and the court shall so order.

24

### C.  42 U.S.C. § 1983

The defendants argue that even if Reogas' actions violated the plaintiff's Fourteenth Amendment equal protection rights, he is entitled to qualified immunity.  Defendant's brief in support at 41.  The plaintiff naturally argues Reogas is not so protected by qualified immunity.  Plaintiff's brief in opposition at 31-33.  The court finds it does not need to reach the issue of qualified immunity as it has already found no actions by any of the defendants which violated any of the plaintiff's rights.  As such, the court notes only that the defendants are entitled to summary judgment on the plaintiff's § 1983 claim as the plaintiff failed to establish any violation of her rights sufficient to present the question of equal protection to a jury.

### IV.  Conclusion

This court having considered all of the evidence, memoranda and briefs and the court finding that the defendants' motion for summary judgment (doc. 29) is due to be granted on all counts of the complaint;

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED** on all counts of plaintiff's complaint and judgment shall be entered in favor of the defendants and against the plaintiff by separate order.

**DONE** and **ORDERED** this the _29_ day of January, 2001.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE